IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MCKINLEY RICHARDSON                                                    MOVANT

v.                                                        No. 1:09CR138-SA-DAS

UNITED STATES OF AMERICA                                           RESPONDENT

### MEMORANDUM OPINION

This matter comes before the court on the motion of McKinley Richardson to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion,

and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set

aside, or correct sentence will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may

be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar

Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St.

John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law

of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is

equally significant in the United States. Article I, § 9, of the Constitution ensures that the right

of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or

invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56.

Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas*

*corpus* principles developed over time in both English and American common law have since

been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

- 3 -

On February 10, 2010, Richardson pled guilty to Count One of the Indictment, which charged conspiracy to possess with intent to distribute an amount in excess of fifty (50) grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). PSR, ¶ 3. According to section 841(a)(1), (b)(1)(A), the minimum term of imprisonment is ten (10) years and the maximum term is life. PSR, ¶ 134.

Richardson was held accountable for 425.83 grams of cocaine base, which resulted in a base offense level of 32. PSR, ¶15. His criminal history was substantial, resulting in a total 19 criminal history points and a criminal history level VI. PSR, ¶70.

He was classified as a career offender within the meaning of U.S.S.G. § 4B1.1. PSR, ¶ 23. A career offender designation elevated his base offense level to 37. PSR, ¶ 23.

United States Sentencing Guideline section 4B1.1 mandates a career offender designation under the following circumstances:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Richardson's Presentence Report ("PSR") predicated his career offender designation on three prior controlled substance offenses:

Sale of Cocaine in Case No. 90-07522, in violation of TN Code Ann. § 39-17-417, Shelby County Criminal Court, Memphis, TN. PSR, ¶ 23, 40.

Possession with intent to sell cocaine, in violation of TN Code Ann. § 39-17-417, Case No. 92-09702, Shelby County Criminal Court, Memphis, TN. PSR, ¶ 23, 46.

Unlawful Possession of cocaine with Intent to Deliver, Case No. 93-01814, in violation of TN Code Ann. § 39-17-417, Shelby County Criminal Court, Memphis, TN. PSR, ¶ 23, 48.

- 4 -

Richardson's career offender designation resulted in a base offense level of 37. PSR, ¶ 23. With a three (3) point reduction for acceptance of responsibility, his total offense level was 34. PSR, ¶ 25. With a criminal history category six (6), his guideline range was 262 to 327 months. PSR, ¶ 135. No U.S.S.G. § 5K1.1 motion was filed.

On October 26, 2010, Richardson was sentenced to 300 months imprisonment. Judgment, (Doc. 153). He did not appeal his conviction. He filed an Expedited Motion for Compassionate Release, which this court denied on June 26, 2020, (Doc. 89).

**The Motion to Vacate Is Untimely**

The limitations period for filing a § 2255 motion is one year. 28 U.S.C. § 2255. The one-year period runs from "the latest of":

> 1. the date on which the judgment of conviction becomes final;

> 2. the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed;

> 3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court [new rule] and made retroactively applicable to cases on collateral review; or

> 4. the date on which facts supporting the claim or claims presented could have been discovered through the exercise of diligence.

*See* 28 U.S.C. § 2255(f); *United States v. Jackson*, 470 F.App'x 324, 327 (5th Cir. 2012).

Mr. Richardson did not file a direct appeal; as such, to be timely, his § 2255 motion should have been filed within one year after the 14-day period for filing a direct appeal has expired (14 days after entry of the judgment of conviction). *United States v. Plascencia*, 537 F.3rd 385, 388 (5th Cir. 2008); *see* Fed. R. App. P. 4(b)(i). The court entered its judgment on October 28, 2010. As Richardson did not seek a direct appeal, excluding weekends and legal holidays, his conviction became final 14 days later on November 17, 2010. The statute of limitations for filing a § 2255

- 5 -

motion expired one year later, on November 17, 2011. He filed the instant motion to vacate on December 6, 2019, some eight years after the deadline expired; as such, the motion is untimely pursuant to § 2255(f)(1), and the petition will be dismissed as untimely filed.

### Equitable Tolling Does Not Apply

"The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (internal quotations omitted). The "AEDPA's filing provision is not jurisdictional but, instead, is a statute of limitations that, like all limitation statutes, could be equitably tolled." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (internal citations omitted); *see also United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (applying equitable tolling to one-year limitations period in 28 U.S.C. § 2255(f)). For this reason, a district court may toll the AEDPA limitations period. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir. 2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir. 2000) ("[E]quitable tolling of the AEDPA's one[-]year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per

curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). A petitioner's delay of even four months shows that he has not diligently pursued his rights. *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

In the present case, the movant argues that it was not until *United States v. Havis*, 927 F.3d 382 (6th Cir. June 6, 2019) was decided that he learned that one of his predicate state convictions was disqualified from being a controlled substance offense. He filed his §2255 motion on December 6, 2019, well within one year of the *Havis* decision; thus, he argues that his motion is timely. However, as discussed in detail below, the motion is based upon his status as a career offender, which (as discussed below) is evaluated based on the divisibility of state criminal statutes – and application of the "categorical approach" and "modified categorical approach" when evaluating such statutes. Binding precedent regarding these issues was established before the Sixth Circuit *Havis* decision. *See United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016); *Johnson v. United States*, 576 U.S. 591, 135 S.Ct. 2551 (2015); *Descamps v. United States*, 570 U.S. 254, 133 S.Ct. 2276 (2013); *Mathis v. United States*, 579 U.S. 500, 136 S.Ct. 2243 (2016). In addition, "a misapplication of an advisory guidelines range, *including a Havis error*, does not present a "cognizable" claim under § 2255. *United States v. McCall*, No. 21-3400, 2022 WL 17843865, at *8 (6th Cir. Dec. 22, 2022). Equitable tolling does not apply, and the instant motion must be dismissed as untimely filed.

### Richardson's Claims Also Fail on the Merits

Richardson argues that the court erred in categorizing him as a career offender under U.S.S.G. § 4.B1.1. Under U.S.S.G. § 4B1.1(a), a defendant is a career offender if three criteria are met: (1) the

defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The third criterion is at issue here.

He was classified as a Career Offender, which required that he have at least two prior felony convictions for a "controlled substance offense". U.S.S.G. § 4B1.1. He had three prior state court felony drug convictions. PSR, ¶ 23. The question is whether two of the three state court convictions (both for possession with intent) qualify as controlled substance convictions. Richardson's three convictions included:

Sale of Cocaine (Case No. 90-07522) in violation of TN Code Ann. § 39-17-417;

Unlawful Possession of a Controlled Substance with Intent to Sell (Case No. 92-09702) in violation of TN Code Ann. § 39-17-417; and

Unlawful Possession of a Controlled Substance with Intent to Sell (Case No. 93-01814) in violation of TN Code Ann. § 39-17-417.

Richardson argues that the *Havis* decision disqualifies Tenn. Code Ann. § 39-17-417 from designation as a controlled substance offense. *United States v. Havis*, 927 F.3d 382 (6th Cir. June 6, 2019). T.C.A. § 39-17-417 reads, in pertinent part,

(a) It is an offense for a defendant to knowingly:

(1) Manufacture a controlled substance;

(2) Deliver a controlled substance;

(3) Sell a controlled substance; or

(4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

- 8 -

In *Havis*, the defendant pled guilty to being a felon in possession of a firearm, and his guideline range was increased for having a prior conviction for a "controlled substance offense." *Havis*, 927 F.3d at 384. The prior drug conviction was for the *sale and/or delivery* of cocaine, in violation of Tenn. Code Ann. § 39-17-417(a)(2)–(3). *Id*. (emphasis added). Under Tennessee law, "delivery" of drugs means "the actual, constructive, or *attempted* transfer of a controlled substance." *Id*. § 39-17-402(6) (emphasis added). Havis argued that his Tennessee conviction did not qualify as a controlled substance offense because it encompassed the *mere attempt* to sell cocaine. *Id*. The United States Sentencing Guidelines do not include *attempt crimes* in the definition of a "controlled substance offense."[1]

The Sixth Circuit reasoned that, using the categorical approach, the court may not consider the actual conduct that led to Havis' conviction under the Tennessee statute; instead, the court must look to the least of the acts criminalized by the elements of that statute. *Havis*, 927 F.3d at 384-85. If the least culpable conduct falls within the Guidelines' definition of "controlled substance offense," then the statute categorically qualifies as a controlled substance offense. But if the least culpable conduct falls outside that definition, then the statute is too broad to qualify as a "controlled substance offense," and the district court erred by increasing Havis' offense level. *Id*.

---

[1] The Sentencing Commission's *commentary* to § 4B1.2(b) states that a controlled substance offense "includes 'the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.' " *Havis*, 927 F.3d at 384 (quoting USSG § 4B1.2(b) comment (n.1)). The Sixth Circuit held that the Guidelines' *text* says nothing about attempt, and the Sentencing Commission had no power to add attempt crimes to the list of offenses in § 4B1.2(b) through commentary. *Id*.

The parties agreed that the least culpable conduct covered by § 39-17-417 was the *attempted* delivery of a controlled substance. *Havis*, 927 F.3d at 385 (citing Tenn. Code Ann. § 39-17-402(6)). The question before the Sixth Circuit thus became whether the definition of "controlled substance offense" in § 4B1.2(b) included attempt crimes. *Id*. The Guidelines' definition of "controlled substance offense" does not include attempt crimes. *Id*. at 387. Hence, T.C.A. § 39-17-417(a)(2)–(3) did not qualify as a controlled substance offense. *Id*.

In the instant case, Richardson makes several arguments. First, he notes that his previous convictions were for violation of T.C.A. § 39-17-417. Second, he notes that *Havis* held that a sale/delivery count under T.C.A. § 39-17-417(a)(2)–(3) is not a federally recognized controlled substance offense. He concludes that because a state sale conviction, in violation of T.C.A. § 39-17-417(a)(2)–(3), does not qualify as a controlled substance offense, then his prior convictions, under T.C.A. § 39-17-417(a)(4) *for possession with intent*, should likewise be disqualified. If the Fifth Circuit followed the Sixth Circuit ruling in *Havis*, then Richardson's sale of cocaine conviction (Case No. 90-07522), in violation of T.C.A. § 39-17-417(a)(2), would not qualify as a controlled substance offense. However, while *Havis* disqualified the *sale and delivery* of controlled substances under T.C.A. § 39-17-417(a)(2)–(3), it did *not* disqualify Richardson's *possession with intent* convictions under § 39-17-417(a)(4).

Put simply, Richardson was properly designated as a career offender because T.C.A. § 39-17-417(a)(4) (possession with intent to distribute a controlled substance), is *divisible* from a sale charge under T.C.A. § 39-17-417(a)(2)-(3). When evaluated independently, a possession with intent charge qualifies as a controlled substance offense. As such, Richardson's two prior convictions for

- 10 -

possession with intent (Case No. 92-09702 (PSR, ¶ 23, 46) and Case No. 93-01814 (PSR, ¶ 23, 48)), qualify as controlled substance offenses.

The disqualification of T.C.A. § 39-17-417(a)(2)–(3) ("sale charge") as a federally recognized controlled substance offense does not automatically disqualify Tenn. Code Ann. § 39-17-417(a)(4) (possession with intent) as a controlled substance offense. Section 39-17-417 is divisible, and its subsections must be viewed separately.

### Categorical Approach and Modified Categorical Approach

The linchpin of this case is whether Richardson's two state possession with intent convictions meet the requirements for a federal "controlled substance offense." A state drug conviction provides the basis for a Career Offender designation only if the elements that make up the state conviction qualify as a federal controlled substance offense. *See Alejos-Perez v. Garland*, 991 F.3d 642, 647 (5th Cir. 2021). In order to make this determination, courts must:

First: Identify the elements that make up the state crime of conviction, and then

Second: Determine whether those elements relate to a federally controlled substance offense.

*Garland*, 991 F.3d at 647 (citing *Mellouli v. Lynch*, 575 U.S. 798, 135 S.Ct. 1980, 1990 (2015)).

To identify the elements of the state crime of conviction, the court should examine the crime's "statutory definition." *Garland*, 991 F.3d at 647. If the state statute criminalizes multiple offenses, the federal court must determine whether the statute is divisible or indivisible. *Id*. (citing *Mathis v. United States*, 579 U.S. 500, 136 S. Ct. 2243, 2249 (2016). When multiple provisions of a statute represent separate crimes, the statute is "divisible." *Id*. Conversely, when a statute provides for different means of proving a single offense, the statute is "indivisible" because it can't be divided into several crimes. *Id*.

- 11 -

For indivisible state drug statutes, the federal courts apply the "categorical approach" to determine whether the state crime involves a federally recognized controlled substance offense. *Garland*, 991 F.3d at 648. For the categorical approach, courts begin by "ignoring the particular facts of the case" and instead ask "whether the elements of the state conviction are the same as or narrower than the elements of the generic removability offense under federal law." *Garland*, 991 F.3d at 647. In other words, even where a defendant sold a controlled substance, the Supreme Court requires that a court ignore the facts of the case and examine only whether any state statutory element falls outside the federal definition of a controlled substance offense. *Garland*, 991 F.3d at 647 (citing *Vazquez v. Sessions*, 885 F.3d 862, 872 (5th Cir. 2018)).

Ignoring the facts of a case is not necessary for divisible statutes, for which federal courts apply the "modified categorical approach" to determine if the state statute involves a federally recognized controlled substance offense. *Garland*, 991 F.3d at 648. Under the modified categorical approach, courts may "look at a limited class of documents from the record of a prior conviction to determine what crime, with what elements, a defendant was convicted of ...." *Garland*, 991 F.3d at 647 (citing *Frierson*, 981 F.3d at 318). After identifying among the several offenses which the defendant committed, courts then "compare that crime's elements to those of the generic offense" (a federally recognized controlled substance offense in the present case). *Id*.

### T.C.A. § 39-17-417 is Divisible

A court attempting to determine the divisibility of a state statute must first determine whether the statute sets forth (1) alternative elements or (2) merely alternative means of proving a single element. *United States v. Frierson*, 981 F.3d 314, 316 (5th Cir. 2020) (citing *Mathis v. United States*, 579 U.S. 500, 136 S. Ct. 2243, 2256 (2016)). Elements must be found by a jury (or admitted by the

defendant) in order to convict. Means are facts not necessary to support a conviction. *Frierson*, 981 F.3d at 316 (citing *Mathis*, 136 S.Ct. at 2255).

Where the state statute contains multiple alternative elements (usually within subsections), it may be divided. The component elements of that statutory subsection may then be evaluated to determine whether the statute qualifies as a controlled substance offense under federal law. *Frierson*, 981 F.3d at 317 (citing *Mathis*, 136 S.Ct. at 2256). If those limited elements from the state statute are narrower than or equivalent to the elements that comprise the analogous federal law, then the prior conviction is a valid predicate for sentence enhancement. *Frierson*, 981 F.3d at 317 (citing *United States v. Sanchez-Rodriguez*, 830 F.3d 168, 172 (5th Cir. 2016)).

The "divisibility" determination of a state statute has three prongs: (1) state caselaw, (2) the statutory text, and (3) the record of conviction. *Alejos-Perez v. Garland*, 991 F.3d 642, 647 (5th Cir. 2021) (citing *Mathis*, 136 S. Ct. at 2256–570).

Regarding the caselaw prong, Tennessee courts held that the sale of a controlled substance, T.C.A. § 39–17–417(a)(2), and the possession of a controlled substance for resale, T.C.A. § 39–17–417(a)(4), involved two separate offenses. *State v. Crawford*, 2011 WL 6020573 *7 (Tenn. Ct. App. Dec. 5, 2011), *Reynolds v. Genovese*, 2019 WL 856536 *3 (Tenn. Ct. App. February 22, 2019). The elements for sale and possession with intent are simply different. *Crawford*, 2011 WL 6020573 *7. Possession with intent to sell requires proof that (1) the defendant knowingly possessed a controlled substance, and (2) the defendant intended to sell the controlled substance. § 39-17-417(a)(4). *Genovese*, 2019 WL 856536 *3. In contrast, the elements of the offense of a sale count are (1) that the defendant actually sold or attempted to sell a controlled substance, and (2) the defendant acted knowingly. § 39-17-417(a)(3). *Id*.

As to the statutory text prong, the Crawford court recognized that sale and possession with intent violate separate paragraphs of T.C.A. §39–17–417. *Crawford*, 2011 WL 6020573 *7. The separate provisions show a clear legislative intent to allow separate convictions for these separate acts.[2] *Id*.

Concerning the record of conviction prong, Richardson attached his Judgment in Case No. 92-09702 (Docket No. 82, pg. 194) and his Judgment in Case No. 93-01814 (Docket No. 82, pg. 196) to his § 2255 motion. In Case No. 92-09702, the Judgment identifies the offense of conviction as "possession with intent to sell cocaine." (No. 82, pg. 194). In Case No. 93-01814, the Judgment identifies the offense of conviction as "unlawful possession of cocaine with intent to deliver." (No. 82, pg. 194). The Tennessee statute is divisible.

### T.C.A. § 39-17-417(a)(4) (Possession with Intent) qualifies as a controlled substances offense

The *Frierson* decision, 981 F.3d 314 (5th Cir. 2020), is analogous to the instant case. In *Frierson*, the defendant was convicted for possession with intent, a subsection of the Louisiana controlled substances statute (La.R.S. § 40:967). *Frierson*, 981 F.3d at 315. Like T.C.A. § 39-17-417, the Louisiana statute also proscribed delivery and manufacturing of controlled substances. La.R.S. § 40:967.

The Fifth Circuit recognized that the Louisiana statute, taken as a whole, included provisions not explicitly found in the corresponding federal statute. *Frierson*, 981 F.3d at 318. Frierson argued

---

[2] The Sentencing Commission Comments to T.C.A. § 39–17–417 state that "[t]he commission wished to make it clear that each of these acts is a separate offense and therefore listed the manufacture, delivery, sale, or possession with intent to manufacture, deliver or sell each as a separate subsection." *State v. Crawford*, 2011 WL 6020573 *7 (Tenn. Ct. App. Dec. 5, 2011).

that the Louisiana statute should be evaluated according to the categorical approach to determine if the state crime qualified as a federally controlled substance offense. *Id*. The categorical approach requires that the court "ignore the particular facts of the case" and instead ask whether any statutory element fell outside the federal definition of a controlled substance offense. *Garland*, 991 F.3d at 647 (citing *Vazquez v. Sessions*, 885 F.3d 862, 872 (5th Cir. 2018)). As the Louisiana statute, taken as a whole, contained provisions not explicitly found in the corresponding federal statute, under the categorical approach the statute would not qualify as a controlled substance offense for enhancement purposes.

However, after examining the Louisiana controlled substance statute, the Fifth Circuit confirmed that it was divisible and subject to the modified categorical approach. *Frierson*, 981 F.3d at 318. Under the modified categorical approach, courts may examine "a limited class of documents from the record of a prior conviction to determine what crime, with what elements, a defendant was convicted of ...." *Garland*, 991 F.3d at 647 (citing *Frierson*, 981 F.3d at 318).

After confirming that Frierson was convicted of possession with intent, the court "compared that crime's elements to those of the generic offense," and confirmed that Frierson committed a controlled substance offense. *Id*. While certain parts of the Louisiana statute did not qualify as a controlled substances offense, the possession with intent section consisted of elements sufficiently narrow to qualify as a controlled substances offense. Frierson's prior offense under La. R.S. § 40:967(A)(1) fell within the definition of a controlled substance offense, which supported application of the career offender enhancement under U.S.S.G. § 4B1.1. *Id*.

As in *Frierson*, Richardson was convicted for possession with intent. Frierson was convicted of a divisible Louisiana controlled substances crime, and Richardson was convicted of a divisible

- 15 -

Tennessee controlled substances crime. Both Frierson and Richardson were convicted of the state crime of possession with intent to distribute. Guideline § 4B1.2(b) identifies possession with intent as a controlled substance crime. Hence, a Tennessee conviction for possession with intent qualifies as a controlled substance offense and is relevant in the determination of a career offender enhancement.

## Conclusion

In sum, the instant motion to vacate, set aside, or correct sentence will be dismissed as untimely filed. In the alternative, it will be denied on the merits. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 22nd day of February, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE